# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HA THI LE ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 16-14867** |
| **LEASE FINANCE GROUP, LLC ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] filed by defendants First Data Global Leasing, First Data Merchant Services LLC, and First Data Corporation (collectively, the "First Data defendants"), asking the Court to reconsider its previous Order and Reasons[2] denying the First Data defendants' request to transfer this action to the U.S. District Court for the Eastern District of New York pursuant to a forum selection clause. Plaintiffs oppose[3] the motion.

For the following reasons, the Court **DENIES** the First Data defendants' motion for reconsideration.

## I.

The Court assumes familiarity with the factual allegations in the amended complaint.[4]

Each individual plaintiff entered into a contractual relationship with the First Data defendants through a Merchant Processing Application and Agreement

---

[1] R. Doc. No. 52.
[2] R. Doc. No. 47.
[3] R. Doc. No. 54.
[4] *See* R. Doc. No. 4; *see also* R. Doc. No. 54, at 1-4 (summarizing the factual allegations in the amended complaint).

("MPAA").[5] Plaintiffs and the First Data defendants used the MPAAs to contract for debit and credit card transaction processing services, which the First Data defendants provided to plaintiffs' businesses. The MPAA incorporates a forum selection clause by reference to a separate Program Guide.[6] This forum selection clause provides that "[t]he exclusive venue for any actions or claims arising under or related to [the MPAA] shall be in the appropriate state or federal court located in Suffolk County, New York."[7]

On May 9, 2017, the Court denied[8] the First Data defendants' request to enforce this forum selection clause. The Court explained that "even if [the MPAA forum selection clause] is valid, the Court may nevertheless decline to transfer under [28 U.S.C. § 1404(a)] in certain circumstances."[9] Assuming *arguendo* that the clause was valid and enforceable—and therefore that the private interests of the parties "weigh[ed] in favor of severance and transfer" as a matter of law[10]—the Court nevertheless declined to transfer the action to the Eastern District of New York based

---

[5] *See, e.g.*, R. Doc. No. 18-2.
[6] R. Doc. No. 18-5.
[7] *Id.* § 32.2.
[8] R. Doc. No. 47.
[9] *Id.* at 15 (citing *In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014)).
[10] *Id.* at 16. *See Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013) ("When parties agree to a [valid] forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.").

on public interest considerations, including avoiding "duplicitous litigation and a waste of judicial resources."[11]

The First Data defendants now ask[12] the Court to reconsider its denial of their request to transfer. Plaintiffs object.[13]

**II.**

Rule 54(b) of the Federal Rules of Civil Procedure provides that "any order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Under Rule 54(b), a district court may "reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, No. 16-10502, 2017 WL 2413815, at *9 (5th Cir. 2017) (per curiam).

Compared with Rule 59(e) of the Federal Rules of Civil Procedure—which governs motions to alter or amend final judgments—Rule 54(b) has been described by the Fifth Circuit as permitting a "more flexible" inquiry. *Austin*, 2017 WL 2413815, at *9. That inquiry includes consideration of "the interests of justice." *Id.* at *10. However, district courts exercise their power under Rule 54(b) "sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays"—consequences that disserve the interests of justice. *Castrillo v. Am.*

---

[11] *Id.*
[12] R. Doc. No. 52.
[13] R. Doc. No. 54.

*Home Mortg. Servicing Inc.*, No. 09-4369, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.).

District courts have generally considered a number of factors when engaging in a Rule 54(b) analysis, including whether the party moving the district court to reconsider an interlocutory order "demonstrates the motion is necessary to correct manifest errors of law or fact upon which the judgment is based," whether an "intervening change in the controlling law" has occurred, whether the moving party presents the district court with new evidence that had been previously unavailable to the party, and "whether the motion is necessary in order to prevent manifest injustice." *Id.* at *4 (considering Rule 59(e) factors while performing the Rule 54(b) inquiry).

### III.

The First Data defendants argue[14] that "previously unavailable" evidence demonstrates that the Court's Order and Reasons was based on factual errors. The First Data defendants also argue[15] that the Order and Reasons results in a "manifest injustice"—namely, the First Data defendants' inability to litigate this action in the forum designated by the forum selection clause.

### A.

The First Data defendants offer two "new" pieces of evidence in support of their motion for consideration: a copy of the Preferred Card Processing Agreement

---

[14] R. Doc. No. 52-1 at 9-12.
[15] *Id.* at 12-19.

4

("Processing Agreement"),[16] and a copy of the Merchant Services and Equipment Purchase Order ("Equipment Order").[17] According to the First Data defendants, these agreements "directly contradict" the allegations in the complaint regarding the First Data defendants' involvement in any conspiratorial or concerted misconduct[18]—allegations that the Court considered in its public interest analysis in its Order and Reasons.[19]

Yet these supposed smoking guns against plaintiffs' allegations of conspiracy are nothing new: both were previously available to the First Data defendants. Plaintiffs submitted the Equipment Order to the Court along with their memorandum in opposition to the First Data defendants' motion to change venue.[20] If the Equipment Order was available to the Court at the time, then it was also available to the First Data defendants—and if it was available to the First Data

---

[16] R. Doc. No. 52-3. The First Data defendants allege that the Processing Agreement strictly "governed" their relationship with co-defendant Payment Systems, Inc. ("PSI"). R. Doc. No. 52-1, at 2, 11. In this relationship, PSI would "board[]" merchants—such as the plaintiffs in this case—to the First Data defendants' credit and debit card transaction processing systems. *Id.* at 5. The First Data defendants would then "pay PSI a fixed amount for each transaction" sent through their systems by merchants that PSI had boarded. *Id.* The First Data defendants' Processing Agreement with PSI purported to bar PSI from misrepresenting information on First Data's behalf, and to require compliance with laws and regulatory requirements. R. Doc. No. 52-1, at 5 (citing R. Doc. No. 52-3, §§ 2, 8.4).
[17] R. Doc. No. 52-4. The Equipment Orders between each individual plaintiff and PSI provided that "the purchase or lease of equipment is a separate and independent transaction from [plaintiffs] desire for credit and debit card processing services." R. Doc. No. 21-7, at 1. The Equipment Orders made PSI a party to the MPAAs and integrated their terms. *See id.* at 3.
[18] R. Doc. No. 52-1, at 12.
[19] *See* R. Doc. No. 47, at 15-18.
[20] *See, e.g.,* R. Doc. No. 21-7.

5

defendants, then the First Data defendants could have incorporated it into their arguments in support of their motion to change venue. Yet despite filing a reply[21] to plaintiffs' memorandum in opposition to the motion, the First Data defendants did not do so.

With regards to the Processing Agreement, the First Data defendants refer to and quote from the Processing Agreement at length in their answer.[22] As such, the Processing Agreement was certainly available to the First Data defendants at the time the Court considered their motion to change venue. However, as with the Equipment Order, the First Data defendants offered no arguments based on the Processing Agreement at the time that the Court considered their motion to change venue. The First Data defendants did not even mention it in either their memorandum in support of motion to change venue *or* their reply to plaintiffs' memorandum in opposition to the motion.[23]

While permitting a "more flexible" inquiry than Rule 59, Rule 54 nevertheless "should not be used to relitigate old matters, raise new arguments, or submit evidence that could have been presented earlier in the proceedings." *Hill v. New Orleans City*, No. 13-2463, 2016 WL 4180809, at *9 (E.D. La. Aug. 8, 2016) (Lemelle, J.). Such motions waste the parties' time and resources—and the Court's.

The First Data defendants are using "evidence that could have been presented earlier in the proceedings" to "relitigate old matters." In its Order and Reasons

---

[21] *See* R. Doc. No. 27.
[22] *See* R. Doc. No. 19, at 28-30.
[23] *See* R. Doc. No. 18-1; R. Doc. No. 27.

6

denying the First Data defendants' motion to change venue, the Court assumed *arguendo* that the forum selection clause—incorporated by reference into the MPAA—was valid; therefore, the Court weighed the parties' private interests in favor of transfer as a matter of law. *See Atlantic Marine*, 134 S. Ct. at 582. Then, the Court considered whether public interest considerations—argued by plaintiffs in their memorandum in opposition[24] to the motion to change venue, and to which the First Data defendants had an opportunity to respond in their reply[25]—outweighed the private interests and favored maintaining the case in the Eastern District of Louisiana, rather than transferring the case to the forum specified in the clause.[26] The Court concluded that the public interests (*i.e.*, "judicial economy, combined with the unique and interrelated nature of the allegations in the complaint") sufficiently outweighed the private interests (*i.e.*, the forum selection clause) to deny enforcement of the forum selection clause.[27]

The First Data defendants have now dug up evidence alleged to be previously unavailable and are using it as grounds to contest the Court's public interest analysis. The "interests of justice" weigh against reconsideration based on such evidence. *Austin*, 2017 WL 2413815, at *10.

**B.**

---

[24] *See* R. Doc. No. 21.
[25] *See* R. Doc. No. 27.
[26] R. Doc. No. 47, at 15-18.
[27] *Id.* at 18.

7

Likewise, the First Data defendants attempt to "relitigate old matters" with their argument that the Court's Order and Reasons denying their motion to change venue results in a manifest injustice. *Hill*, 2016 WL 4180809, at *9. "Manifest injustice is '[a]n error in the trial court that is direct, obvious, and observable[.]'" *Rocha v. CCCF Admin.*, No. 09-1432, 2010 WL 1333138, at *2 (D. Colo. Apr. 2, 2010) (Arguello, J.) (quoting Black's Law Dictionary 436 (2d pocket ed. 2001)) (alteration in original). "A showing of manifest injustice requires there be a fundamental flaw in the Court's decision that would lead to an inequitable result that is not in line with public policy absent correction." *Vineyard v. Knox Cnty.*, No. 13-634, 2014 WL 11638564, at *1 (E.D. Tenn. Nov. 6, 2014) (Reeves, J.).

The First Data defendants have not pointed to a "fundamental flaw" in the Court's Order and Reasons. *Vineyard*, 2014 WL 11638564, at *1. In the Order and Reasons, the Court observed that an inquiry into private and public interests structures a § 1404(a) analysis.[28] The Court then assumed the validity of the forum selection clause between plaintiffs and the First Data defendants—although, to be clear, the Court did not hold that the clause is indeed valid—and as a matter of law weighed the private interests in favor of severance and transfer to the Eastern District of New York.[29] Nevertheless, the Court concluded that this is a rare case where the public interests outweigh the private interests to a sufficient degree to warrant a refusal to enforce the forum selection clause.[30]

---

[28] *Id.* at 15.
[29] *Id.* at 15-16.
[30] *See id.* at 16-18.

8

The First Data defendants object to how the Court weighed the public interests.[31] They allege that severance and transfer pursuant to the forum selection clause would not hinder judicial economy to the extent that the Court concluded and therefore such considerations cannot overcome the clause. In short, the "manifest injustice" identified by the First Data defendants is their disagreement with the Court's analysis and conclusion in its Order and Reasons. However, "mere disagreement with the decision" of the Court does not work a manifest injustice. *United States v. Hildenbrand*, 376 Fed. App'x 466, 466 (5th Cir. 2010). The First Data defendants have not demonstrated to the Court that its Order and Reasons works a manifest injustice.

## C.

The Court concludes that reconsideration of its Order and Reasons is not warranted. The evidence—and facts and arguments drawn therefrom—that the First Data defendants now offer the Court were previously available to them. Yet the First Data defendants put this evidence forward only now. Moreover, the First Data defendants have not shown that the Court's Order and Reasons results in manifest injustice.

---

[31] *See* R. Doc. No. 52-1, at 12-19. The First Data defendants also put forward a parade-of-horribles argument: the Court's previous Order and Reasons will encourage undesirable behavior among litigants. *See id.* at 19. The Court has confidence that district courts will be able to avoid this sort of manipulation. Moreover, if litigants provide the district courts with any relevant evidence or arguments to smoke out such undesirable behavior by other parties, then this alleged danger should greatly diminish.

In the Order and Reasons, the Court concluded that enforcement of the forum selection clause between plaintiffs and the First Data defendants was not warranted—a conclusion that, the Court points out, in no way impairs the First Data defendants' ability to argue the merits on the case. *Cf. Austin*, 2017 WL 1379453, at *2 (noting that the district court's refusal to consider evidence affected summary judgment). Rather, the Court's conclusion simply means that the First Data defendants will have to argue the merits in Louisiana rather than in New York.

## IV.

For the foregoing reasons,

**IT IS ORDERED** that the First Data defendants' motion for reconsideration is **DENIED**.

New Orleans, Louisiana, July 7, 2017.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**